UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                            :
BRIAN WHEAT,                                :
                                            :
                    Plaintiff,              :
                                            :          OPINION AND ORDER
         - against -                        :
                                            :          10 Civ. 5459 (SAS)
NEW YORK CITY DEPARTMENT OF        :
CORRECTION, WARDEN DAVIS,          :
AND CORRECTION OFFICER COLDS,:
                                            :
                    Defendants.             :
------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        Brian Wheat ("Wheat"), a pretrial detainee held at Rikers Island,

brings this action *pro se* pursuant to section 1983 of title 42 of the United States

Code against the New York City Department of Correction ("DOC"),[1] Correction

---

[1]     Defendants correctly assert that, as an agency of the City of New York
("City"), the DOC cannot be sued. *See* N.Y. City Charter Ch. 17 § 396 (2009)
("All actions and proceeding for the recovery of penalties for violation of any law
shall be brought in the name of the City of New York and not in that of any
agency. . . ."). *Accord Adams v. Galletta,* 966 F. Supp. 210, 212 (S.D.N.Y. 1997)
("[W]here a plaintiff has named the Department of Correction as a defendant, he
has sued a non-suable entity."). However, in the interests of efficiency and fairness
— particularly in light of plaintiff's *pro se* status — I constructively amend the
complaint to substitute the City as a defendant. *See Androbus v. Department of
Corr.*, No. 07 Civ. 2076, 2009 WL 773277, at *3 (S.D.N.Y. Mar. 24, 2009)
(constructively amending plaintiff's complaint to add the City as a defendant in

1

Officer Colds and Warden Davis (collectively, "defendants"), alleging that his constitutional rights were violated.  Defendants move to dismiss Wheat's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on several grounds.  For the reasons that follow, defendants' motion is denied except with respect to Warden Davis.

## II.   BACKGROUND

On May 17, 2010, while held at Rikers Island, Wheat underwent an institutional search conducted by Officer Colds ("Colds"), who confiscated Wheat's personal sneakers.[2]  According to a DOC policy, inmates are not permitted to keep personal footwear and are should receive departmental footwear when they are first processed, along with a property receipt for their personal footwear.[3]  Colds gave Wheat a property receipt for the sneakers, but did not provide him with a replacement pair.[4]  Wheat asked Colds what he was supposed to wear and Colds

-------------------

place of the DOC for purposes of justice, speed, and cost-control.) *Accord City of Rome, New York v. Verizon Wireless Communications, Inc.*, 362 F.3d 168, 181 (2d Cir. 2004).

[2]      *See* Wheat's Account of Dates and Approximate Time of Events ("Events"), Ex. D to Complaint ("Compl.").

[3]      *See* Correction Department City of New York Notice to Inmates, Ex. I to Compl.

[4]      *See* Compl. at 3, 5.

responded that he would be given a pair of sneakers issued by the Department of Corrections.[5]  Wheat asked a second officer, Officer King ("King"), to call and get him a pair of sneakers, but King replied that the inmate clothing area did not have any.[6]  Constant Watson ("Watson"), another inmate, also had his sneakers confiscated and was not given a replacement.[7]

On May 25, 2010, Wheat filed a grievance regarding his lack of replacement sneakers.[8]  Wheat did not receive a response.[9]  Watson also filed a grievance and never received a response.[10]  Wheat alleges that he wore shower slippers — the only alternative footwear he had — while he lacked sneakers and that the shower slippers hindered his ability to walk.[11]  On June 2, 2010, the thong of Wheat's shower slipper detached and caused him to fall down the stairs.[12]  He

---

[5]     *See* Events.

[6]     *See* Grievance Filed by Wheat ("Grievance"), Ex. C to Compl.

[7]     *See* 6/24/10 Declaration of Constant Watson ("Watson Decl."), Ex. F to Compl.

[8]     *See* Grievance.

[9]     *See* Compl. at 4.

[10]    *See* Watson Decl.

[11]    *See* Compl. at 5.

[12]    *See id.* at 3.

3

was taken to the hospital, where doctors determined that he suffered back trauma but had no serious fractures.[13]

Upon returning from the hospital on June 2, 2010, Wheat, whose shoe size is an eight, was provided with a pair of size twelve sneakers.[14] The next day Wheat requested a formal hearing regarding the lack of response to his initial grievance.[15] The employee in the grievance office informed Wheat that she had never received the grievance, and supplied Wheat with size eight sneakers as he requested.[16]

Wheat claims Colds acted with deliberate indifference when she confiscated his sneakers and did not provide him with a replacement.[17] Construing Wheat's *pro se* complaint liberally,[18] Wheat also alleges that the City has a policy, custom or practice of displaying deliberate indifference towards inmates' health

---

[13]     *See id.*

[14]     *See* Events.

[15]     *See id.*

[16]     *See id.*

[17]     *See* Compl. at 5.

[18]     *See, e.g., Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 164 (1984) ("[P]ro se pleadings are to be given a liberal construction.").

4

and safety.[19]  Wheat seeks compensatory and punitive damages for defendants'

failure to provide him with adequate footwear after confiscating his personal

footwear during an institutional search.[20]  Defendants move to dismiss Wheat's

complaint on the grounds that (1) he fails to state a claim of deliberate indifference;

(2) he does not allege Warden Davis' personal involvement; (3) Colds is shielded

by qualified immunity; and (4) Wheat fails to demonstrate a City policy, practice

or custom.[21]

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), the court must "accept as true all of the factual allegations

contained in the complaint"[22] and "draw all reasonable inferences in [the]

plaintiff[s'] favor."[23]  However, courts need not accord "[l]egal conclusions,

---

[19]     *See* Compl. at 5.

[20]     *See id.*

[21]     *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Def. Mem.") at 4-5, 12, 15, 17.

[22]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[23]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[24] To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[25] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[27]

When determining the sufficiency of a claim under Rule 12(b)(6), the court is normally required to consider only the allegations in the complaint. However, the court is allowed to consider documents outside the pleading if the documents are integral to the pleading or subject to judicial notice.[28] "Moreover, the pleadings of a pro se plaintiff must be read liberally and should be interpreted

---

[24]    *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

[25]    *Twombly*, 550 U.S. at 564.

[26]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

[27]    *Id.* (quotation marks omitted).

[28]    *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

to raise the strongest arguments that they suggest."[29]

### B.    Section 1983

Section 1983 states in relevant part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[30]

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[31]  "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[32]

---

[29]    *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quotations and citations omitted).

[30]    42 U.S.C. § 1983.

[31]    *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). *Accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'" (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979))).

[32]    *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

7

Any form of liability under section 1983 requires that the defendant's direct involvement caused the damages. "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[33] In order for an individual deprived of a constitutional right to have recourse against a municipality under section 1983, the plaintiff must show that he or she was harmed by a municipal "policy" or "custom."[34]

## C.   Qualified Immunity

"[G]overnment officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability."[35] "In the case of legislators, judges, and certain executive officials such as prosecutors, the protection usually takes the form of absolute immunity from liability for damages."[36] "In the case of most

---

[33]   *Iqbal*, 129 S. Ct. at 1948 (citations omitted).

[34]   *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *Accord Board of County Comm'rs v. Brown*, 520 U.S. 397, 402 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986).

[35]   *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). *Accord Cornejo v. Bell*, 592 F.3d 121, 124, 127 (2d Cir. 2010).

[36]   *Cornejo*, 592 F.3d at 124.

8

executive employees, however, the protection takes the form of 'qualified immunity,' *i.e.*, immunity from liability if the employee was acting in subjective and objective good faith."[37]

"Qualified immunity is an affirmative defense designed to protect the defendant public official not just from liability but also from suit thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial."[38]  In all cases, the qualified immunity analysis mandates a fact-specific inquiry. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[39]  A discretionary function "involves an element of judgment or choice," such that the activity at issue does not have a predetermined outcome.[40]  A government official engaged in ministerial "conduct

---

[37]    *Id.*

[38]    *Amore v. Novarro*, 610 F.3d 155, 161 (2d Cir. 2010) (quotation and alterations omitted). *Accord Jenkins v. City of New York*, 478 F.3d 76, 87 n.9 (2d Cir. 2007) ("[Qualified immunity] is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))).

[39]    *Harlow*, 457 U.S. at 818.

[40]    *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

that is not the product of independent judgment will be unaffected by threat of liability" and is therefore not protected by immunity doctrines.[41]

The inquiry as to whether an eligible government official is entitled to qualified immunity is two-fold. *First*, the court "must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right."[42] *Second*, "the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct."[43] Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[44]

The Second Circuit has held that a right is clearly established for qualified immunity purposes if "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful."[45] "'Unless the plaintiff's allegations state a claim of violation of

---

[41]     *Id.*

[42]     *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009).

[43]     *Id.* at 816 (quotation omitted).

[44]     *Id.* at 818. *Pearson* recognized, however, that the traditional sequence "is often appropriate." *Id.*

[45]     *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quotation omitted). *Accord Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant,

clearly established law, a defendant pleading qualified immunity is entitled to

dismissal.'"[46]

---

dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

Despite the Supreme Court's clear directive, the Second Circuit has not been consistent as to the circumstances under which a governmental officer is entitled to qualified immunity. *Compare Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (recognizing a third condition under which qualified immunity is triggered: "A government official sued in his official capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; *or (3) if the defendant's action was objectively legally reasonable . . . in light of the legal rules that were clearly established at the time it was taken.*") (quotations and citations omitted) (emphasis added)) *with Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 433 n. 11 (2d Cir. 2009) ("[O]nce a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for a police officer who violated this clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful."). *Accord Amore*, 610 F.3d at 162 (recognizing tension in the case law as to [w]hether the 'objectively reasonable' inquiry is framed as part of the 'clearly established' inquiry, or apart from it . . . ."). Because the Supreme Court has made clear that the qualified immunity test consists only of two prongs, I will not consider the reasonableness of defendants' conduct here. *See, e.g., Walczyk v. Rio*, 496 F.3d 139, 165 (2d Cir. 2007) (Sotomayor, J., concurring) ("I write separately to call the Court's attention to our collective failure to harmonize our qualified immunity analysis with the Supreme Court's directives."). *Accord Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) ("[W]e adopt the [Supreme] Court's two-part test and abandon our previous usage of a three-step analysis.").

[46]   *Scott v. Fischer*, 616 F.3d 100, 110 (2d Cir. 2010) (*quoting Forsyth*, 472 U.S. at 526)).

11

**D.      Deliberate Indifference**

The Constitution prohibits "inhumane" prisons and therefore "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[47]  The Eighth Amendment charges prison officials with a duty to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food, *clothing*, shelter and medical care, and [to] take reasonable measures to guarantee the safety of the inmates."[48] However, because pretrial detainees are not prisoners, claims challenging their conditions of confinement are governed by the Fourteenth Amendment Due Process Clause.[49]  Nevertheless, a pretrial detainee's claim of deliberate indifference is analyzed under the same test as an Eighth Amendment claim for deliberate indifference.[50]

"[A] prison official violates the Eighth Amendment only when two

---

[47]      *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

[48]      *Id.* (emphasis added).

[49]      *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

[50]      *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

requirements are met."[51]  The two requirements include an objective prong and a

subjective prong.  *First*, the alleged deprivation must be sufficiently serious that it

denies a prisoner "the minimal civilized measure of life's necessities."[52]  A

sufficiently serious deprivation means an objective "condition . . . that may

produce death, degeneration or extreme pain."[53]  *Second*, the official must act with

a "sufficiently culpable state of mind."[54]  That state of mind is a "deliberate

indifference to [an] inmate's health or safety."[55]  It entails "a state of mind more

blameworthy than negligence" and "something less than acts or omissions for the

very purpose of causing harm or with knowledge that harm will result."[56]

Deliberate indifference requires that a prison "official knows of and disregards an

excessive risk to inmate health or safety."[57]  Subjectively, the prison official "must

both be aware of facts from which the inference could be drawn that a substantial

---

[51]     *Farmer*, 511 U.S. at 833.

[52]     *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

[53]     *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quotations omitted).

[54]     *Farmer*, 511 U.S. at 834 (quotations and citations omitted).

[55]     *Id.* at 835.

[56]     *Id.*

[57]     *Id.* at 837.

risk of serious harm exists, and he must also draw the inference."[58]

## IV.   DISCUSSION

### A.   Deliberate Indifference

Wheat sufficiently pleads a claim for deliberate indifference. He alleges specific facts constituting a serious deprivation and asserts that Colds knew of the deprivation and appreciated the risk to his safety.

### 1.   Objective Element

When defendants confiscated Wheat's shoes and failed to provide him with any replacement for two weeks, they "violate[d] contemporary standards of decency" and thus caused a "sufficiently serious" deprivation to satisfy the objective prong of plaintiff's deliberate indifference claim.[59]  For example, in *Gaines v. New York City Department of Correction*,[60] the court held that the DOC's alleged "act of providing institutional footwear of . . . extremely poor quality ha[d] the potential of amounting to the denial of the minimal civilized measure of life's

---

[58]    *Id.*

[59]    *Braxton v. Nichols*, 2010 WL 1010001, at *3 (S.D.N.Y. Mar. 18, 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

[60]    No. 10 Civ. 189, 2010 WL 4537040, at *2 (S.D.N.Y. Nov. 3, 2010).

14

necessities" in violation of the Eighth Amendment.[61]  A government entity may not

deprive detainees "of basic human needs [such as] *clothing*."[62]  Moreover,

defendants exposed Wheat to conditions that "pose an unreasonable risk of serious

damage to his [present and] future health"[63] — the injuries plaintiff sustained as a

result of falling down the stairs were only one of the ills created by defendants'

conduct.  Plaintiff could just as easily have stepped on a sharp object, or severely

stubbed his toe. Such "actual or imminent harm" to plaintiff's safety and well-

being is sufficient to sustain a deliberate indifference claim at this stage of the

---

[61]     *Id.* at *2.  Defendants argue that, under *Rodriguez v. Ames*, a detainee's "unnecessary [physical] discomfort" does not "constitute [a] serious medical condition" and cannot therefore sustain a deliberate indifference claim. 224 F. Supp. 2d 555, 560 (W.D.N.Y. 2002). *See* Def. Mem. at 9.  However, while the plaintiff in *Rodriguez* alleged deliberate indifference *to his medical needs*, Wheat asserts a violation of his *constitutional right to clothing*.  Here, the requisite harm was incurred when Wheat was deprived of shoes, not after he sustained injuries relating to uncomfortable shoes. Unlike the plaintiff in *Rodgriguez*, Wheat's claim goes well beyond that of ill-fitting footwear, as he was never provided with DOC-issued shoes until after he fell. *See, e.g.*, *Gaines*, 2010 WL 4537040, at *2 ("[Plaintiff's] allegations, that the violations of his constitutional rights to adequate clothing are a direct result of the jail officials' policy prohibiting inmates from wearing personal footwear and requiring them to wear institutional footwear of extremely poor quality, seem likely to have merit.").

[62]     *McLawrence v. Department of Corrs. New York City*, No. 08 Civ. 11095, 2010 WL 2710640, at *4 (S.D.N.Y. July 8, 2010) (emphasis added).

[63]     *Id.* (quoting *Helling*, 509 U.S. at 35).

litigation.[64]

### 2.      Subjective Element

Wheat alleges that Colds knew that he was deprived of shoes, and "purposely" disregarded the resulting risk to his health or safety.[65]  Colds confiscated Wheat's sneakers and in return gave him only a property receipt.[66] When Wheat asked Colds what he should wear, she told him he would be given a replacement pair, but none was ever provided.[67]  Construing Wheat's *pro se* complaint liberally, Wheat avers that Colds was aware of the risk to his safety because she knew that shoes were required by the DOC and are a basic necessity of life, and that he did not have a replacement pair of sneakers.[68]  Thus, I conclude that Wheat sufficiently pleads the second element of a deliberate indifference claim.  His allegations, accepted as true, support the conclusion that Colds knew of sufficient facts to infer that a risk of harm existed and that she drew that inference.

### B.      Warden Davis

---

[64]    *Id.* (citation and quotation omitted).

[65]    *See* Pl. Mem. at 2.

[66]    *See* Events.

[67]    *See* Grievance.

[68]    Pl. Mem. at 7.

16

To state a section 1983 claim against Warden Davis, Wheat must prove that Warden Davis' acts directly violated his constitutional rights. Warden Davis may not be sued for supervisory liability under this section. Because Wheat's complaint lacks any allegation that Warden Davis violated his constitutional rights — and Wheat admits that he cannot plead facts regarding Warden Davis' participation[69] — the motion to dismiss is granted as to Warden Davis.

### C.   Qualified Immunity

Colds is not entitled to dismissal of Wheat's complaint based on qualified immunity. Qualified immunity does not attach where a plaintiff claims a violation of a constitutional right that was clearly established at the time of the violation.[70] *First*, as discussed above, Wheat has properly pled a claim of deliberate indifference to his constitutional right under the Due Process Clause of the Fourteenth Amendment to receive adequate clothing while detained.[71] *Second*, Wheat's right to receive adequate clothing was clearly established when his shoes

---

[69]   *See id.* at 9.

[70]   *See Pearson*, 129 S. Ct. at 815-16.

[71]   *See supra* Part V.A.

17

were confiscated and no replacement issued.[72] Colds is therefore not shielded by qualified immunity.

### D.    Municipal Policy, Custom or Practice

Construing Wheat's allegations liberally, Wheat alleges sufficient facts at this stage of litigation to indicate that the City may have a pattern and custom of acting with deliberate indifference toward providing inmates with adequate clothing.  Wheat alleges that more than one officer failed to provide him with replacement shoes, that the prison did not even have replacement shoes, and that when he filed a complaint, it went unanswered.  These facts amount to more than a bald assertion that the City has a policy, custom or practice of violating constitutional rights.  Defendants argue that the deprivation of Wheat's shoes "is nothing more than a single instance"[73] and therefore cannot be the result of a policy.  Defendants overlook evidence that Watson's shoes were also taken, that he was not given another pair and that his grievance was met with silence.  Accepting these facts as true, Wheat's allegations sufficiently suggest the existence of a

---

[72]    *See Farmer*, 511 U.S. at 832 (holding that prison officials must provide inmates with "adequate clothing" and reasonably "guarantee [their] safety.").

[73]    Def. Mem. at 19.

18

municipal pattern or custom of deliberate indifference.[74] Wheat therefore properly states a claim against the City.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted as to Warden Davis. The remainder of defendants' motion to dismiss is denied. The Clerk of the Court is directed to close this motion (Docket No. 5). A conference is scheduled for January 3, 2011 at 4:30 P.M.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            December 15, 2010

_____

[74]      *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("The inference that such a policy existed may arise from 'circumstantial proof . . .'") (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)).

19

## - Appearances -

**Plaintiff (Pro Se):**

Brian Wheat

15-15 Hazen Street

East Elmhurst, New York 11370


**For Defendants:**

Martha Calhoun

Assistant Corporation Counsel

The New York City Law Department

100 Church Street

New York, New York 10007

(212) 788-0923